LEWIS, J.,
concurring in part and dissenting in part.
While I concur in the decision of the majority approving the Commission’s finding a violation of Canon 7 of the Code of Judicial Conduct by Judge Kinsey, I cannot agree with a number of points within the majority opinion. My consideration of the Code leads me to conclude that the conduct presented here is in violation of the principles outlined in Canons 1, 2, 3, and 7, and this, along with a $50,000 fine, soils the judicial position to the extent that removal is the only reasonable alternative. In my view, one of the most important factors is that the conduct this Court considers today was not simply the product of an isolated instance of indiscretion, a momentary lapse of judgment, or the exposure of human frailty from which we all suffer from time to time. The conduct here was repeated, intentional, direct action -with a designed purpose which cast aspersions and doubt onto the heart of the judicial system and the elected judicial office sought by Judge Kinsey. The proper discipline for this type of conscious, purposeful behavior directed to the judicial office is removal, and I dissent.
I fear that the majority opinion reflects an attempt to “split the baby” in determining that the conduct analyzed is not protected speech, yet the appropriate discipline is to be a reprimand and an enormous fine. In my view, the conduct here is either protected speech deserving no discipline, or egregious non-protected conduct and promises of future conduct deserving of removal from the bench. I thus regard the opinion voiced by Justice Wells in his dissent as certainly an arguable perspective, but I must respectfully disagree.

Conduct

First, I cannot agree with the majority’s conclusion that Canons 1, 2, and 3 are totally inapplicable during the candidacy of judges. The preamble to the Code of Judicial Conduct reads: “The Code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through disciplinary agencies.” Fla.Code Jud. Conduct, Preamble (emphasis supplied). Further, as expressly noted by the majority, see majority op. at 85 n. 4., but inexplicably ignored, “This Court has consistently ruled that pre-judicial conduct *98 may be used as a basis for removal or reprimand of a judge.” In re Davey, 645 So.2d 398, 403 (Fla.1994). Although Judge Davey had been elected at the time the misconduct occurred, he was not a sitting Article V judge. Canon 1 and Canon 2 were determined to be applicable under such circumstances, and the same reasoning should apply here. Indeed, the Judicial Qualifications Commission “has constitutional authority to investigate prejudicial acts and recommend to this Court the removal (for unfitness) or reprimand (for misconduct) of a sitting judge.” Id.
The Code of Judicial Conduct expressly provides that “[t]he Canons and Sections are rules of reason.” Fla.Code Jud. Conduct, Preamble. Therefore, the interests underlying the Canons themselves must be considered in connection with the issue of whether they apply to candidates for judicial office as well as sitting judges. “[Jjudges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system.” Id. This principle is no less applicable to judicial candidates than current judges; indeed, because judicial elections may represent one of the few times in which the general public directly scrutinizes the behavior of judges and judicial candidates, the entirety of the standards enunciated in the Code must be followed by both groups. We cannot have, and it is totally unworkable and illogical to have, different and multiple standards applicable to candidates for the same judicial position.
Additionally, I read the text of Canon 7(A)(3)(a) as requiring judicial candidates to conduct themselves in accordance with the entirety of the Code. Specifically, Canon 7 states: “A candidate for judicial office ... shall maintain the dignity appropriate to judicial office and act in a manner consistent with the integrity and independence of the judiciary....” Fla.Code Jud. Conduct, Canon 7(A)(3)(a). Clearly, this provision mandates that a candidate for the bench must comply with the same standards as sitting judges. The principles embodied in Canons 1, 2, and 3 are incorporated into Canon 7, and cannot be simply ignored. Therefore, I dissent from that portion of the majority opinion which does precisely that.
I must also dissent from that part of the majority’s conclusion which addresses Charge 4. Having repeatedly reviewed the comments expressed during this radio interview, I must conclude that Judge Kinsey’s discussion with the caller had absolutely nothing whatsoever to do with her background or qualifications or those of her opponent, Judge Green. Further, her comments did not relate to character or integrity in any fashion. Her publicly broadcasted commentary was nothing less than an attack upon any and all attorneys who had at any time in their pasts represented a criminal defendant, and was specifically aimed at Judge Green. She portrayed herself as a prosecutor who would continue to prosecute — even though she was seeking election to an office which demands nothing less than complete neutrality. See In re McMillan, 797 So.2d 560, 571 (Fla.2001) (“This Court has declared from time immemorial that the lack of bias and partiality is an essential prerequisite to service as a judicial officer.”). The campaign tactic here, as demonstrated by Judge Kinsey’s comments during this radio interview, was nothing other than a “law and order” campaign designed to inflame public opinion and pander to principles totally contrary to a fair and impartial application of the law by a neutral arbiter in the judicial system. In my view, Judge Kinsey’s statements during this radio interview violated Canons 1, 2, 3, and 7 of the Code of Judicial Conduct, and consti *99 tuted a specific pledge and promise of inappropriate conduct in judicial office.

Discipline

As noted above, I concur in the portion of the majority decision concluding that Judge Kinsey’s statements and conduct constitute pledges and promises of conduct in judicial office not qualified as protected speech under the decision of the United States Supreme Court in Republican Party of Minnesota v. White, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002). However, because “[t]he Code of Judicial Conduct is clear and unambiguous as to its proscription against both judges and judicial candidates making ‘pledges or promises of conduct in office other than the faithful and impartial performance of the duties of the office,’ ” McMillan, 797 So.2d at 566, the only rational conclusion would be the removal of Judge Kinsey from the position secured through inappropriate pledges and promises, among the other violations.
In my view, the imposition of this fine, the amount of which is clearly designed and intended to represent the enormity of the reprehensible behavior, sends the message to future candidates that they may violate the Code and commit ethical breaches, if they are prepared to pay a monetary fine following the election. The kinds of promises and type of condemnable campaign behavior demonstrated here tarnishes the very purpose for which the judiciary was established — to fairly and impartially consider any and all matters, without preconceived notions or positions about the merits of each case. Judges should not pledge to be prosecutors or defense attorneys; they should pledge to administer the law neutrally and justly. In the final analysis, the essential question here is whether the parent of a child who has been wrongly accused of a crime could walk into a courtroom and look to Judge Kinsey with confidence that his or her child would be fairly treated and given justice in her courtroom. After hearing Judge Kinsey’s radio interview, and reading the campaign literature at issue, the clear answer is no. I conclude that if the actions are so reprehensible that the majority believes the imposition of a $50,000 fine is justified, those actions must certainly justify removal from the office so tainted. Selecting an enormous fine as discipline only sends the message that “anything goes” in judicial elections if a candidate has the financial ability to pay the monetary consequences. Indeed, in this era in which many judicial candidates in Florida are able to produce significant campaign funds from donations or personal assets, there may come a day when candidates simply maintain monetary reserves to pay fines following the election and then only the economically powerful can successfully compete in the election process.
I fear that the majority attempts to walk a fine, if not illusory, line by determining that the United States Supreme Court’s decision in White does not protect Judge Kinsey’s statements, yet approving an enormous monetary fine and reprimand as discipline. The issue is quite clear to me: either this Court should dismiss the charges of misconduct on the authority of White, or the judicial office is so tainted that a removal from office is the only rational result. I believe the campaign actions of Judge Kinsey are quite similar to the behavior relating to the credibility of law enforcement witnesses described and condemned by the Second District Court of Appeal as “a flagrant violation of ... the Code of Judicial Conduct” in Dougherty v. State, 746 So.2d 486, 488 (Fla. 2d DCA 1999). “[T]o allow someone who has committed such misconduct during a campaign to attain office to then serve the term of judgeship obtained by *100 such means clearly sends the wrong message to future candidates; that is, the end justifies the means and, thus, all is fair so long as the candidate wins.” McMillan, 797 So.2d at 573.
Based upon the foregoing, I respectfully dissent from the majority’s conclusions regarding the discipline in this case. I would conclude that clear and convincing evidence exists in support of the JQC’s determinations that Judge Kinsey violated Canons 1, 2, 3, and 7. Further, if the payment of a $50,000 fine is appropriate and necessary, it so taints the judicial office that removal is the only alternative.